UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEITH A. TAYLOR,<br>    *Plaintiff*,<br><br>  *vs.*<br><br>CAROLYN W. COLVIN, *Acting Commissioner*<br>*of Social Security Administration*,<br>    *Defendant.* | )<br>)<br>)<br>)   1:14-cv-0469-JMS-MJD<br>)<br>)<br>)<br>) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Keith Taylor applied for disability insurance benefits from the Social Security Administration ("SSA") on April 11, 2011. After a series of administrative proceedings and appeals, including a hearing in July 2012 before Administrative Law Judge ("ALJ") Angela Miranda, the ALJ determined that Mr. Taylor was not entitled to disability insurance benefits. In February 2014, the Appeals Council denied Mr. Taylor's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Mr. Taylor then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

### I.
#### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the

credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citation omitted) (alterations in original). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Taylor was fifty years old on the alleged onset date of his disability, December 15, 2010. [Filing No. 12-2 at 18-19.] He has a high school education and past relevant work as a maintenance worker, a stationary engineer, a machine operator, and a forklift operator. [Filing No. 12-2 at 17-18.] Mr. Taylor suffers from various cardiac impairments and myocardial infarctions, which will be discussed as necessary below.[1] He meets the insured status requirements of the Social Security Act through December 31, 2015. [Filing No. 12-2 at 13.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on February 22, 2013. [Filing No. 12-2 at 13-19.] The ALJ found as follows:

- At Step One, the ALJ found that Mr. Taylor did not engage in substantial gainful activity[2] since the alleged onset date of his disability, December 10, 2010. [Filing No. 12-2 at 13.]

- At Step Two, the ALJ found that Mr. Taylor suffered from the following severe impairments: coronary artery disease, mild ventricular hypertrophy, mild left atrial dilation, and a remote history of myocardial infarctions. However, the ALJ found that Mr. Taylor's hemorrhoids, diverticulosis, and chronic ischemic small vessel disease were non-severe. Additionally, the ALJ found that Mr. Taylor's major depression and drug dependence were not medically determined by an acceptable source. [Filing No. 12-2 at 13-14.]

---

[1] Mr. Taylor detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Taylor, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

- 3 -

- At Step Three, the ALJ found that Mr. Taylor did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Specifically, the ALJ concluded that neither Listing 4.04 (ischemic heart disease) nor Listing 12.04 (affective disorders) were met. [Filing No.12-2 at 14.] The ALJ also determined that Mr. Taylor had the RFC to perform light work.³ [Filing No. 12-2 at 14-15.]

- At Step Four, the ALJ found that Mr. Taylor was unable to perform his past relevant work as a maintenance worker, a stationary engineer, a machine operator, and a forklift operator. [Filing No. 12-2 at 17.]

- At Step Five, the ALJ found that Mr. Taylor could perform other jobs existing in the national economy such as an injection molding machine tender, an assembly machine tender, and a cashier. [Filing No. 12-2 at 18-19.]

Based on these findings, the ALJ concluded that Mr. Taylor was not disabled and thus not entitled to disability insurance benefits. [Filing No. 12-2 at 19.] Mr. Taylor sought review of the ALJ's decision from the Appeals Council, but it denied his request for review. [Filing No. 12-2 at 2-5.] Mr. Taylor's appeal from the Commissioner's decision is now before this Court.

## III.
### DISCUSSION

Mr. Taylor challenges the ALJ's decision on four bases, arguing that: (1) the ALJ did not adequately assess the medical evidence; (2) the ALJ's step-three analysis was inadequate; (3) the ALJ's adverse credibility determination was erroneous; and (4) substantial evidence fails to support the ALJ's RFC determination. [Filing No. 18 at 7-16.] The Court will address each argument in turn.

---

³ Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

- 4 -

### A. The ALJ's Assessment of Medical Evidence

Mr. Taylor maintains that the ALJ "arbitrarily rejected" medical evidence from Dr. Brater because it was "contrary to the ALJ's unqualified medical opinion." [Filing No. 18 at 7-9.] Moreover, Mr. Taylor contends that his medical evidence shows he was totally disabled and that is was therefore erroneous for the ALJ not to assess this evidence.[4] [Filing No. 18 at 7-8.]

The Commissioner argues that the ALJ properly weighed the medical evidence among Mr. Taylor's doctors. [Filing No. 23 at 10-13.] Specifically, the Commissioner details the ALJ's assessment provided by Dr. Brater and Dr. Misumi and argues that the ALJ adequately explained the weight given to those opinions. [Filing No. 23 at 10-13.]

Mr. Taylor replies that neither the Commissioner nor the ALJ "point to any treatment or examination evidence that is contrary to Dr. Brater's examination findings" and that the ALJ "refuse[d] to accept Dr. Brater's limitations based only on [her] layperson's medical evaluations." [Filing No. 26 at 3.]

The Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Carradine v.*

---

[4] The briefs submitted by Mr. Taylor's counsel, as this Court has noted in several other cases, contain numerous, sporadic references to seemingly random propositions of law—e.g., the ALJ must "build an accurate and logical bridge from all of the evidence in the record to her conclusions." [Filing No. 18 at 8.] Because there are no accompanying explanations as to how these propositions were violated in this specific case, these undeveloped arguments are waived. *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted); *Johnson v. Astrue*, 2010 WL 1190123, *6 (S.D. Ind. 2010) (claimant waived argument where she merely provided a "string of block quotes from medical records . . . devoid of any legal analysis").

*Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). "[C]ourts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence." *Glenn v. Sec'y of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).

The Court disagrees with Mr. Taylor that the ALJ's analysis of Dr. Brater's medical assessment was deficient. The ALJ specifically acknowledged Dr. Brater's examination of Mr. Taylor individually and in relation to the examination by Dr. Misumi, as well as Mr. Taylor's own testimony regarding his limitations. [Filing No. 12-2 at 15-17.] Mr. Taylor's claim that neither the Commissioner nor ALJ point to "any treatment or examination evidence that is contrary to Dr. Brater's examination findings" is patently false. [Filing No. 26 at 3.] The ALJ specifically wrote that "[Dr. Brater's] assessment is much more limited than the objective results of Dr. Brater's examination imply, and is starkly contrasted by Dr. Misumi's finding, which were consistent with the rather benign objective clinical results of the Brater examination." [Filing No. 12-2 at 17.] The ALJ continued to note inconsistencies between Dr. Brater's assessment that Mr. Taylor "can stand or walk only one hour per day" and Mr. Taylor's own testimony he is able to "do light hour work, engage in normal personal care, make simple meals, do some cleaning, walk, use public transportation, and shop for food (Ex. 8E)." [Filing No. 12-2 at 16.] Because of the inconsistencies between Dr. Brater's evaluation and the rest of the evidence, the ALJ's decision to give Dr. Brater's opinion "little weight" is supported by substantial evidence. [Filing No. 12-2 at 17.]

In sum, the ALJ considered and weighed the medical evidence, and substantial evidence supports the ALJ's decision regarding it. Accordingly, the Court will not disturb the ALJ's decision on this basis.

**B.    The ALJ's Step-Three Analysis**

Mr. Taylor argues that the ALJ erred in not calling a medical expert to testify regarding whether he medically equaled Listing 4.04 or any other listing. [Filing No. 18 at 11.] Moreover, Mr. Taylor states that "[t]he ALJ cited no evidence regarding medical equivalence to a Listing but also simply assumed . . . that the claimant's combined impairments did not medically equal any Listing." [Filing No. 18 at 11 (citing Filing No. 12-2 at 14).] The Commissioner responds that the ALJ was not required to call a medical expert on equivalence because the ALJ's decision is supported by the state agency medical consultant's opinion on equivalence. [Filing No. 23 at 14-16.] Mr. Taylor replies by simply repeating the same arguments he made in his opening brief. [Filing No. 26 at 6-7.]

At Step Three, the ALJ must consider whether a disability applicant has one or more conditions considered conclusively disabling. Those conditions, called "Listed Impairments," are found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Even if a disability application cannot satisfy the requirements of a particular listing, an applicant will still be considered disabled if the applicant can demonstrate "medical equivalence." *See* 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing."); *Id.* § 404.1526 (setting forth standards for determining medical equivalence). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, --- F.3d ----, 2015 WL 75273, *5 (7th Cir. 2015). "A finding of medical equivalence requires an expert's opinion on the issue." *Id.* (citing *Barnett*, 381 F.3d at 670).

At issue here is Listing 4.04, which provides:

Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3–4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

A. Sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:

    1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (–1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than aVR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or

    2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or

    3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or

    4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

OR

B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12–month period (see 4.00A3e).

OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

    1. Angiographic evidence . . . and

    2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

[20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04](#).

The ALJ determined at Step Three that neither Listing 4.04 nor Listing 12.04 were met. [Filing No. 12-2 at 14.] As to Listing 4.04, the ALJ stated as follows: "The claimant contends he meets listing 4.04, ischemic heart disease, which requires specific clinical findings that result in marked limitations of physical activity. The record does not prove such limitations are present. In fact, a stress test showed good exercise capacity at 12.7 METS and no chest discomfort." [Filing No. 12-2 at 14.]

The ALJ's step-three decision is clearly deficient. In fact, the ALJ's analysis is similar to the two-sentence step-three analysis the Seventh Circuit has "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 2015 WL 75273, at *6 (collecting cases). In *Minnick*, the Seventh Circuit reversed the ALJ's step-three decision because the ALJ merely stated what Listing was under consideration and that "the evidence does not establish the presence" of certain symptoms necessary to meet the Listing. *Id.* The ALJ's analysis here is materially the same: the ALJ identified Listing 4.04, stated in a conclusory manner that the evidence does not show that it is met, then noted one specific fact which supports that conclusion. But as the Listing provides, there are several ways a claimant can meet Listing 4.04, and the ALJ's perfunctory analysis does not address each of those possibilities.

Furthermore, the ALJ did not discuss, let alone consider an expert's opinion on, whether Mr. Taylor medically equaled a Listing. The Commissioner maintains that calling a medical expert was unnecessary given that the ALJ's decision is supported by the state agency medical consultants' opinions. [Filing No. 23 at 14-16.] But the ALJ did not explicitly state that she was relying on the state agency consultants' opinions, and the Court cannot presume or speculate that she did. Without knowing what, if anything, the ALJ considered regarding medical equivalence, the ALJ

has not complied with her obligation to "buil[d] an accurate and logical bridge between the evidence and her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This failure, because it precludes the Court from being able to assess whether the ALJ's considered an expert on medical equivalence, is an additional reason that the ALJ's step-three determination was deficient. *See Minnick*, 2015 WL 75273, at *6 (reversing the ALJ's decision because, among other reasons, "the ALJ never sought an expert's opinion as to whether any of the evidence could support a finding of equivalency" and thus "erred by failing to build a logical bridge from the evidence to her conclusion").

In sum, the ALJ's analysis was not meaningfully different than the analyzes of other ALJs that the Seventh Circuit has "repeatedly found inadequate." *Id.* The ALJ's decision must therefore be reversed and remanded. On remand, the ALJ must consider the various ways Listing 4.04 can be met, an expert's opinion on medical equivalence, and finally, build a logical bridge between the evidence and her ultimate step-three conclusion.

### C. The ALJ's Adverse Credibility Determination

Mr. Taylor contends that the ALJ's adverse credibility determination was erroneous in that the ALJ relied on "the same boilerplate credibility determination" the Seventh Circuit has criticized without articulating "any legitimate reason for her credibility determination." [Filing No. 18 at 12-15.] The Commissioner acknowledges that the Seventh Circuit has criticized the boilerplate language used by the ALJ here, but argues that the use of it is not reversible error because the ALJ went beyond the boilerplate language and "discussed in sufficient detail how the medical evidence did not support [Mr. Taylor's] claims." [Filing No. 23 at 15-16.] Mr. Taylor replies that the Commissioner "engages in improper post hoc rationalization" and "misstates the ALJ's findings." [Filing No. 26 at 8.]

- 10 -

The ALJ's credibility determination is typically entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

At the hearing, Mr. Taylor had testified that he "tires quickly, struggles with stress, can stand for no more than 10 minutes, can sit for no more than 15 minutes, and this medications do not substantially alleviate his symptoms." [Filing No. 12-2 at 15.] Regarding Mr. Taylor's testimony, the ALJ began with the boilerplate credibility language often used by ALJs:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are unpersuasive for the reasons explained in this decision.

[Filing No. 12-2 at 15.] However, the ALJ then conducted a lengthy analysis of each doctor's evaluation of Mr. Taylor and Mr. Taylor's own testimony from early 2011 to 2012, and explained how the evidence is "in contrast to the much more profound limitations alleged by [Mr. Taylor]." [Filing No. 12-2 at 17.]

Mr. Taylor is correct that the above quoted language used by the ALJ is the exact credibility boilerplate language criticized by the Seventh Circuit. *See Bjornson*, 671 F.3d at 644-45. This boilerplate language is disfavored because, among other reasons, it "puts the cart before the horse, in the sense that the determination of [RFC] must be based on the evidence . . . rather than forcing the [claimant's] testimony into a foregone conclusion"; but the Commissioner is correct that the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained [her] conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper*, 712 F.3d at 367-68 ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [s]he otherwise points to information that justifies h[er] credibility determination."). Simply put, when "the ALJ follow[s] the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility, . . . the boilerplate phrases are not [a] problem." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Here, like in *Filus* and *Pepper*, the ALJ provided a lengthy explanation, which included numerous citations to the record, as to why Mr. Taylor's testimony was not credible. [Filing No. 12-2 at 14-17.] For example, the ALJ rejected Mr. Taylor's allegations of "rather extensive limitations" because evidence showed that his limitations were mild to normal and that he was prescribed "conservative care." [Filing No. 12-2 at 16.] Therefore, although the use of this boilerplate language is inappropriate and should not be used, its inclusion in this case was harmless. *Filus*, 694 F.3d at 868. In short, Mr. Taylor's assertion that the ALJ's "credibility determination is contrary to the evidence, because the ALJ ignored or misinterpreted the evidence," [Filing No. 18 at 12], simply ignores the ALJ's decision. Accordingly, reversal is not warranted on this basis.

### D. RFC Determination[5]

Mr. Taylor argues that the ALJ's decision must be reversed because she "did not accurately describe [his] impairments." [Filing No. 18 at 16.] Specifically, Mr. Taylor contends that the ALJ "impermissibly failed to account for the functional impairments determined by Dr. Brater in the evaluation for Social Security." [Filing No. 18 at 16.] The Commissioner responds that the ALJ properly weighed the state agency physician's and Dr. Brater's opinions in reaching Mr. Taylor's RFC, and also added additional limitations based on other evidence. [Filing No. 23 at 16-17.] In reply, Mr. Taylor merely states that the ALJ's RFC assessment was incomplete because it rejected Dr. Brater's evaluation in favor of the state agency medical assessment. [Filing No. 26 at 9.]

"Although the ALJ need not discuss every piece of evidence in the record, [s]he must confront the evidence that does not support h[er] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, the ALJ "may not ignore entire lines of evidence" or "fail[] to take into account . . . diagnosed physical impairments." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

Mr. Taylor's argument that the ALJ rejected Dr. Brater's medical evaluation in favor of the ALJ's "layperson speculation and the opinions of the agency's non-examining review psychologists" is unavailing. [Filing No. 26 at 9.] The ALJ specifically addressed both of these lines of evidence, stating:

> As for the opinion evidence, I have given the State agency medical consultants' assessments (Exs. 9F and 14F) significant weight. The State agency medical consultants opined the claimant has the capacity to sustain light physical demands with postural and environmental limitations. Except for the limitation of occasional balancing, I have incorporated these limitations in the residual functional capacity.

---

[5] Mr. Taylor characterizes this issue as a challenge to the ALJ's step-five determination. [Filing No. 18 at 16.] But because the specific arguments he makes relate the ALJ's RFC decision, [Filing No. 18 at 16], the Court classifies the challenge as such.

> These opinions are supported by the clinical findings by the consultative examiner and treatment records from Dr. Misumi (Exs, 4F, 10F, and 12F).
>
> . . . .
>
> I have given little weight to the opinion provided by Dr. Brater, which states that the claimant can stand or walk only one hour per day, lift 20 pounds infrequently, and is limited in posturing (Ex. 4F). This assessment is much more limited than the objective results of Dr. Brater's examination imply, and is starkly contrasted by Dr. Misumi's findings, which were consistent with the rather benign objective clinical results of the Brater examination. Moreover, Dr. Brater's assessment is inconsistent with the claimant's reported daily activities (Ex. 8E) and with the fact that the claimant was performing work for a period in early 2012 (Ex. 3D).

[Filing No. 12-2 at 17.]

The ALJ's discussion makes clear that she considered both the state agency medical consultant's assessments, Dr. Misumi's assessments, as well as Dr. Brater's assessments, but found Dr. Brater's assessments contrary to other record evidence. [*See* Filing No. 12-2 at 17.] Indeed, the ALJ explains in some detail why she gave "significant weight" to the state agency physician's opinions and "little weight" to Dr. Brater's opinion. [Filing No. 12-2 at 17.] Therefore, Mr. Taylor's argument that the ALJ "failed to account for the functional impairments determined by Dr. Brater," [Filing No. 18 at 16], is simply not true; the ALJ "confront[ed] the evidence that d[id] not support h[er] conclusion and explain[ed] why it was rejected," as she was required to do. *Indoranto*, 374 F.3d at 474.

Accordingly, the Court will not overturn the ALJ's decision on this basis.

### IV.
#### CONCLUSION

For the reasons explained, the ALJ's denial of relief is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion. Final judgment will issue accordingly.

February 3, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF to all counsel of record</u>**